IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION NO.: 3:20-cv-00077

| ALFRED JOHNSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT AND** |
| vs. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| PULTE HOME COMPANY, LLC | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Alfred Johnson ("Plaintiff" or "Johnson"), by and through counsel, brings this action for violations of 42 U.S.C. § 1981 and Wrongful Discharge in Violation of North Carolina Public Policy against Defendant Pulte Home Company, LLC ("Pulte").

## THE PARTIES

1. Alfred Johnson is an adult individual who is a resident of Charlotte, North Carolina.

2. Defendant Pulte Home Company is a foreign limited liability company registered and in good standing in the State of North Carolina. At all times relevant, Defendant employed 15 or more employees.

## JURISDICTION AND VENUE

3. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over the subject matter of the claims brought for unlawful race discrimination under 42 U.S.C. § 1981.

4. Plaintiff's claim for Wrongful Discharge in Violation of North Carolina Public Policy is based on the statutory and common law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because it arises out of the same nucleus of operative facts as the FLSA claims – both claims arise out of Defendant's unlawful termination of Plaintiff.

5. This Court has personal jurisdiction over Defendant because it conducts substantial business operations through its offices located in Mecklenburg County, North Carolina, which is located within this judicial district.

6. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County located within this judicial district.

## PLAINTIFF'S FACTUAL ALLEGATIONS

7. Plaintiff, an African American male, began his employment with Defendant on or about May 2018 as a Customer Care Manager.

8. At all times Plaintiff met or exceeded Defendant's legitimate employment expectations.

9. On or about April 4, 2019, Plaintiff made a site visit to one of Defendant's customer's home to discuss the customer's home warranty. Jamie Wallace ("Wallace"), a subcontractor Defendant hired, was present pursuant to his contract with Defendant. During the visit, Plaintiff and Wallace had a disagreement regarding the framing of the home.

10. While inside the customer's home, Wallace demanded Plaintiff meet him outside of the customer's home. Wallace then berated Plaintiff and referred to him as "boy" in a derogatory fashion intended to slight Plaintiff because he is African American. Plaintiff told

Wallace that he did not appreciate his comments. In response, Wallace physically imposed himself on Plaintiff in a threatening manner. Attempting to avoid further confrontation, Plaintiff walked away from Wallace and got into his car. As Plaintiff was driving away, Wallace ran after Plaintiff's car on foot and began yelling into Plaintiff's driver's side window until he could no longer keep up with Plaintiff's car.

11. After driving away from the customer's home, Plaintiff noticed Wallace's vehicle closely following his. Plaintiff telephoned Chris Branan ("Branan"), Pulte's Senior Customer Care Manager and Plaintiff's direct supervisor, and advised him of the racially discriminatory comment Jamie made and the argument that followed. Plaintiff also told Branan that Wallace was now following his vehicle. Joe Kirby ("Kirby"), Pulte's Procurement Manager, was listening in on this telephone call. Plaintiff told Branan that he had a firearm and intended to defend himself if Wallace continued to threaten his safety. Shortly after this telephone call, Wallace stopped following Plaintiff.

12. On or about the same day, Plaintiff informed one of Pulte's Human Resources representatives, Moe (last name unknown) and Pulte's Vice President of Construction, Curt Hathaway ("Hathaway"), about Wallace's comments and the subsequent car chase. Branan, Kirby, and Curt called Plaintiff and requested Plaintiff meet with them in person. During the meeting, Branan apologized for Wallace's actions.

13. On April 12, 2019, Branan called an emergency meeting with Plaintiff. During this meeting, Branan told Plaintiff that Wallace was no longer working with Defendant, but that Defendant was terminating Plaintiff's employment because of his involvement in the altercation that occurred on April 4, 2019.

14. Wallace continued to work with Defendant as a subcontractor after Plaintiff's termination.

## Plaintiff's First Cause of Action

### (Violation of 42 U.S.C. § 1981 – Retaliation)

15. Plaintiff incorporates by reference paragraphs 1 through 14 of his Complaint.

16. Plaintiff was subjected to unlawful retaliation by Defendant in violation of 42 U.S.C. § 1981 when Defendant terminated his employment for reporting racial discrimination Defendant exposed him to.

17. Defendants' actions were intentional, willful, and/or undertaken in reckless disregard of Plaintiff's rights as protected by 42 U.S.C. § 1981.

18. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

## Plaintiff's Second Cause of Action

### (Violation of 42 U.S.C. § 1981 – Discrimination)

19. Plaintiff incorporates by reference paragraphs 1 through 18 of his Complaint.

20. Plaintiff was subjected to unlawful discrimination by Defendant in violation of 42 U.S.C. § 1981 when Defendant terminated his employment on the basis of his race, African American.

21. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

## Plaintiff's Third Cause of Action

### (Wrongful Discharge in Violation of North Carolina Public Policy)

22. Plaintiff incorporates by reference paragraphs 1-21 of his Complaint.

23. Defendant's termination of Plaintiff was a wrongful discharge in violation of North Carolina's public policy of protecting and safeguarding the right and opportunity of all persons to hold employment without discrimination or abridgement on the account of race by employers which regularly employ 15 or more employees to seek, obtain, codified by N.C. Gen. Stat. § 143-422.2.

24. Defendant's conduct in discharging Plaintiff was taken with malice or reckless indifference to Plaintiff's rights.

25. As a result of Plaintiff's wrongful discharge Plaintiff has sustained and will continue to sustain damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a) Order Defendant to pay to Plaintiff compensatory damages;

b) Order Defendant to pay to Plaintiff punitive damages;

c) Order Defendant to pay to Plaintiff all attorneys' fees, litigation expenses, and costs incurred as a result of bringing this action;

d) Order Defendant to pay to Plaintiff pre- and post-judgment interest on all sums recoverable; and

e) Order Defendant to provide Plaintiff with all other legal and/or equitable relief to which he is entitled.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

 /s/ Jason S. Chestnut
Jason S. Chestnut, NCSB #52066
Philip J. Gibbons, Jr. NCSB #50276
Craig L. Leis, NCSB # 48582

GIBBONS LEIS, PLLC
14045 Ballantyne Corporate Place, Ste. 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
E-Mail: jason@gibbonsleis.com
          phil@gibbonsleis.com
          craig@gibbonsleis.com